824 So.2d 523 (2002)
SUCCESSION OF Rosalie Bigman LINDER.
No. 02-CA-106.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 2002.
*524 Richard B. Levin, Levin Law Offices, New Orleans, Attorney for Jane Linder Rosenthal.
Daniel T. McKearan, Harahan, and Charles B. Johnson, Coleman, Johnson, Artigues & Jurisich, L.L.C., New Orleans, Attorneys for Leo Guenther.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, and WALTER J. ROTHSCHILD.
SOL GOTHARD, Judge.
Appellant, Jane Linder Rosenthal, appeals from the trial court's ruling denying her petition to annul probated testament. For the following reasons, we affirm the decision of the trial court.
Rosalie Bigman Linder, testator, died on November 30, 1994. Appellant, who resides in California, is the decedent's daughter.
Ms. Linder executed a testament on December 10, 1993. In her will, she bequeathed the sum of $2,000.00 to Janice Sturdevant, any royalties and/or mineral rights to Leo Guenther, legacies of personal property to Elsa Quintanilla and Leny Boudreaux, and the remainder of the estate to Touro Synagogue. The will provides the decedent's daughter, Jane Linder Rosenthal, was disinherited. Leo Guenther was named as executor for the succession.
The petition for probate was filed on December 6, 1994. On June 28, 1996, Mr. Guenther filed a rule to show cause why Ms. Rosenthal should not suffer disinherisance. On April 24, 1997, the trial court denied the Rule for Disinherison, and therefore, Ms. Rosenthal was entitled to her forced portion.[1]
On August 25, 1999, Ms. Rosenthal filed a petition to annul probated testament. In *525 the petition, she alleges that the will was invalid because the decedent was incompetent and lacked the requisite capacity at the time the testament was written, or in the alternative, the testament was invalid because it was not properly executed and/or confected according to Louisiana law, or in the alternative, that the decedent was subject to undue influence.
Trial on the petition was had on March 21, 2001. Upon motion for directed verdict, the trial court ruled that the testament was properly executed as to form, and that the allegations of undue influence were not proved. The trial proceeded on the issue of whether the decedent lacked testamentary capacity.
On March 21, 2001, the trial court rendered judgment holding that the testament executed by decedent was valid. Ms. Rosenthal filed a motion for new trial, which was denied on July 9, 2001. This appeal followed.

FACTS
In this matter, Mrs. Rosenthal sought to annul her mother's testament, alleging that it was invalid as to form, because her mother could no longer see to read at the time the will was drafted. She further alleged that her mother no longer had mental capacity at the time of the signing of the will, because of her medical condition. She finally argued that Mr. Guenther exerted undue influence on decedent, as evidenced by the fact that decedent bequeathed to him what purported to be the most valuable asset of the estate.
At the trial of this matter, Mrs. Rosenthal testified that she had not seen her mother, the decedent, for five years and that she had no personal knowledge of the decedent's condition. She testified that, prior to death, the decedent had told her she (decedent) cancelled her subscription to the Times Picayune because she could no longer see to read the paper. In 1992, the decedent sent Ms. Rosenthal a copy of her living will. At that time, the decedent told her that she (decedent) could no longer sign checks.
Ms. Rosenthal further testified that, prior to her mother's death, she would call her mother's house, and her mother's sitter would put her mother on the phone; however, her mother could not speak and could only grunt. Mrs. Rosenthal would then talk to her mother's friend, Freda, and from her was informed that her mother's health was failing.
Concerning the royalties left to Mr. Guenther, Ms. Rosenthal testified that her family purchased land in 1898, but sold the property in 1975, reserving a portion of the mineral rights.
Dr. Patterson testified that Mrs. Linder was his patient and that she was admitted in 1992 for gastrointestinal complaints. At that time, it was discovered that she had suffered a stroke, and that this was her second stroke. He noted some expressive aphasia, but she was alert and verbal. In July of 1993, she suffered a heart attack. Her next office visit was in October of 1993. At that time, she was alert, and she could understand and respond. She specifically declined the flu shot. He did not have any sign of mental failure noted in his records.
Dr. Farokh Contractor testified that the decedent was admitted to Touro rehabilitation after her stroke. She exhibited right-sided weakness and mixed aphasia (expressive and receptive). At that time, in December of 1992, she did not have testamentary capacity. Diagnostic testing showed occlusion of the internal carotids. No vision problems were noted. There was no follow up visit after December of 1992. Dr. Contractor declined to offer an *526 opinion as to her mental capacity at the time the will was confected.
Janice Sturdevant, who was eighty-nine years old at the time of trial, testified that she had known the decedent for over seventy years. Prior to death, she spoke to the decedent on the telephone almost everyday, and visited often. The decedent understood and answered intelligently, up until a day or so before her death. She testified that the decedent had no problems seeing, and that she could sign her name. She admitted that she had never seen the decedent sign anything; she based her assertion on having seen the decedent pick up some fruit.
Vincent Rodriguez was the attorney who drafted the will. He visited Mrs. Linder at her condominium, where they discussed her intentions. He then went to his office and drafted the will. After the first draft, she wanted some changes, and he prepared a second draft. The formalities were met in executing the will. Mrs. Linder did not appear sight impaired, and she was alert and understood what was happening. Mrs. Linder told him that she was physically unable to sign the will. Mr. Rodriguez further testified that he had not met Mr. Guenther until the day the will was executed.
Mr. Leo Guenther, CPA, testified that he had prepared Mrs. Linder's taxes for eleven years prior to her death. She executed a power-of-attorney in July of 1993, but had been a signatory on her account before that time. He wrote the checks that paid her bills, and he reconciled her bank statements. He did this at her house, and in her presence, while the two would discuss her financial affairs. She was able to speak, and she understood her financial affairs. He had no contact with her doctors, and nothing to do with her medical affairs.
Mr. Guenther further testified that he notified Mrs. Rosenthal on the day her mother died. He did not suggest to Mrs. Linder that she leave her mineral royalties to him.
Elsa Quintanilla was decedent's live-in sitter from April of 1993, until her death. Ms. Quintanilla testified that Mrs. Linder was able to communicate until right before her death. Mrs. Linder's neighbor gave her the newspaper every day, which she would read and they would discuss. She stated that sometimes Mr. Guenther came to the house to conduct the financial affairs, and sometimes it was his secretary, Leny Boudreaux, who came to the house.

ANALYSIS
Plaintiff assigns as error the trial court's decisions finding that the statutory testament was valid as to form, that plaintiff failed to prove undue influence in the execution of the will, and that plaintiff failed to prove that the testator lacked testamentary capacity at the time of the execution of the will. Plaintiff also appears to argue that the trial court's failure to specifically articulate the burden of proof applied amounts to reversible error. Plaintiff further alleges that the trial court erred in substituting its own opinion for that of the medical experts.
La. C.C. art. 1573 provides that, "The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null."
La. C.C.P. art. 2931 states that, "A probated testament may be annulled only by a direct action brought in the succession proceeding against the legatees, the residuary heir, if any, and the executor, if he has not been discharged. The action shall be tried as a summary proceeding."
La. C.C.P. art. 2932 provides that:

*527 The plaintiff in an action to annul a probated testament has the burden of proving the invalidity thereof, unless the action was instituted within three months of the date the testament was probated. In the latter event, the defendants have the burden of proving the authenticity of the testament, and its compliance with all the formal requirements of the law.
In an action to annul a notarial testament, a nuncupative testament by public act, or a statutory testament, however, the plaintiff always has the burden of proving the invalidity of the testament.
At the time of the execution of the will, R.S. 9:2442 provided in pertinent part that:
A. A statutory will may be executed under this Section only by a person who knows how to sign his name and knows how to and is physically able to read. C. If the testator is unable to sign his name because of a physical infirmity, the will shall be prepared in writing and shall be dated and executed in the following manner:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his last will, that he is unable to sign because of a physical infirmity, and shall then affix his mark at the end of the will and on each other separate page of the instrument.
(2) In the presence of the testator and each other, the notary and the witnesses shall then sign the following declaration, or one substantially similar: "The testator has declared that he knows how to sign his name but is unable to sign his name because of a physical infirmity and he has affixed his mark at the end and on each page of this will and declared or signified in our presence that this is his last will and testament and in the presence of the testator and each other we have hereunto subscribed our names this __ day of ________, 19 __."
Plaintiff argues that the trial court erred in finding that the testator could see to read, in light of the medical history presented. However, the trial court, in failing to invalidate the will, stated that there had been no evidence produced at trial to support the contention that decedent could not see or read. This is a factual finding that we cannot say is manifestly erroneous.
Plaintiff next argues that the trial court erred in finding that she had failed to meet her burden of proving that the succession's executor and legatee, Leo Guenther, exercised undue influence.
La. C.C. art. 1479 provides that, "A donation inter vivos or mortis causa shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor so as to substitute the volition of the donee or other person for the volition of the donor."
La. C.C. art. 1483 states:
A person who challenges a donation because of fraud, duress, or undue influence, must prove it by clear and convincing evidence. However, if, at the time the donation was made or the testament executed, a relationship of confidence existed between the donor and the wrongdoer and the wrongdoer was not then related to the donor by affinity, consanguinity or adoption, the person who challenges the donation need only prove the fraud, duress, or undue influence by a preponderance of the evidence.
In this case, we can conclude that, because Mr. Guenther held the decedent's power-of-attorney, and because he was not related to the decedent by blood, appellant *528 had to prove undue influence by a preponderance of the evidence, rather than the more strenuous burden of clear and convincing evidence. See, Succession of Braud, 94-0668, (La.App. 4 Cir. 11/17/94), 646 So.2d 1168, writ denied, 95-0383 (La.3/30/95), 651 So.2d 841.
Ms. Rosenthal argues that the testament itself shows undue influence, because, under the terms of the will, Mr. Guenther received what purported to be the most valuable asset in the decedent's estate, and further because the testament attempts to disinherit her. Appellant produced no other evidence to show undue influence. Mr. Guenther testified that he did not advise decedent to disinherit her daughter, and he did not request that she leave him the mineral royalties.
In granting the directed verdict on the issue of undue influence, the trial court stated that, "Counsel, you haven't shown me anything to make me believe that somebody pressured this woman to do what she did." We find that the trial court did not commit manifest error in this ruling, and therefore, appellant failed to meet her burden of proof.
Appellant next challenges the finding of testamentary capacity. La. C.C. art. 1477 provides that, "To have capacity to make a donation inter vivos or mortis causa, a person must also be able to comprehend generally the nature and consequences of the disposition that he is making."
La. C.C. art. 1482 states:
A person who challenges the capacity of a donor must prove by clear and convincing evidence that the donor lacked capacity at the time the donor made the donation inter vivos or executed the testament. However, if the donor made the donation or executed the testament at a time when he was judicially declared to be mentally infirm, then the proponent of the challenged donation or testament must prove the capacity of the donor by clear and convincing evidence.
There is a presumption in favor of testamentary capacity. In this case, appellant bore the burden of proving lack of capacity by clear and convincing evidence.
In determining testamentary capacity, the question is whether the testator understood the nature of the testamentary act and appreciated its effects. There is a presumption of testamentary capacity which can only be overcome by clear and convincing evidence. The determination of testamentary capacity is a question of fact upon which the trial judge's findings will not be disturbed unless clearly wrong. Corley v. Munro, 93-713 (La.App. 3 Cir. 2/2/94), 631 So.2d 708, 709, citing Succession of Lyons, 452 So.2d 1161 (La.1984).
In Succession of Braud, supra, the court said:
The case law is clear that proof of the presence of a mentally-debilitating condition at the approximate time that the will was executed is insufficient to prove lack of testamentary capacity at the time the will was executed by clear and convincing evidence, especially in light of conflicting evidence of the decedent's capacity at the actual time the will was executed.
At page 1171.
Appellant relies on the testimony of Dr. Contractor, who testified that the decedent was aphasic, and had blockage of the carotid arteries, at the time he saw her in December of 1992, and that the blockage was not a condition that would resolve itself. Dr. Contractor specifically declined to offer an opinion as to decedent's capacity at the time of the testament.
Appellees rely on the testimony of decedent's caretaker, her friend, and the attorney *529 who drafted the will. Mr. Rodriguez testified that he found the decedent to be "very alert and very understanding" when they discussed the provisions of the testament. Ms. Quintanilla and Ms. Sturdevant, witnesses who saw decedent on a daily basis, both testified that decedent was alert and cognizant.
The trial court, in ruling that the decedent had the requisite mental capacity, evaluated the testimony of all the witnesses. The trial court stated that he was particularly impressed with the testimony of Ms. Sturdevant, who stated that the decedent was competent. We can find no manifest error in the trial court's conclusion.
In this appeal, the appellant also argues that the trial court's failure to indicate what standard for the burden of proof used in its rulings constitutes reversible error. We find no merit to this assertion. We have taken the trial court's factual conclusions, and applied the correct burdens of proof, and we find no error in the trial court's rulings.
Finally, the appellant has argued that the trial court committed reversible error by substituting its opinions for that of the medical experts. Our review of the record shows, however, that the trial court was not substituting his opinion, but was merely indicating that he had some knowledge of the medical condition that was the subject of the testimony (blockage of the carotid arteries) because his mother had died from that condition. We find no merit to appellant's contention that this amounts to the trial court having substituted its opinion for that of the medical testimony.
For the above discussed reasons, the ruling of the trial court denying the petition to set aside probated testament is affirmed. All costs are assessed against appellant.
AFFIRMED.
NOTES
[1] At the time of the execution of the will, and at the time of death, all children were forced heirs pursuant to La. C.C. art. 1493. See, Succession of Fragala, 28,663, (La.App. 2 Cir. 9/27/96), 680 So.2d 1345.