806 So.2d 909 (2002)
SUCCESSION OF Jo-El Stengel SMITH a/k/a Mrs. Milton J. Smith.
No. 01-CA-930.
Court of Appeal of Louisiana, Fifth Circuit.
January 15, 2002.
Rehearing Denied February 4, 2002.
Wiley J. Beevers, Raylyn R. Beevers, Bernard M. Plaia, Gretna, LA, Attorneys for Plaintiff/Appellee (Diane Smith Peterson).
*910 James F. Willeford, New Orleans, LA, Attorney for Defendant/Appellant (James Calvin Smith).
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and JAMES L. CANNELLA.
GOTHARD, Judge.
This is an appeal from a judgment of the trial court which invalidated a notarial will on the basis that is does not meet the requirements of LSA-C.C. article 1577. For reasons that follow, we affirm.
The record shows that the last will and testament of the deceased, Jo-El Stengel Smith, was executed on August 9, 2000 while she was a patient in the hospice area of Touro Infirmary. Decedent is survived by two adult children, James Calvin Smith and Diane Frances Smith Peterson. A "Petition for Probate of Statutory Testament and for Confirmation of Testamentary Executor" was filed by Mr. Smith, who was designated as the executor in the testament. Ms. Peterson filed a "Petition to Annul Probated Testament" challenging the document on the basis that the deceased was not of sound mind. A subsequent amended petition challenged the testament as to form.[1] After a trial on the matter, the trial court rendered judgment which declared the testament an absolute nullity as a matter of law. The reasons for judgment show that the trial court found the will "possesses sufficient material deviations from the codal requirements, as stated in LSA-C.C. Art. 1577, as to render the testament null." Specifically, the trial court found that the testament was invalid because one the witnesses, Ivan Hamilton, was not in the room when the testator signed the document. Further, the court found the witnesses and the notary did not sign the attestation in the presence of the testator and each other. Mr. Smith appeals that judgment.
At the hearing, Mr. Smith testified that his mother wished to write a will. In accordance with her wishes, he had the will prepared by his attorney, Steve Rittenbush. On the evening of August 9, 2000, Mr. Smith picked up Mr. Rittenbush at his office and the two men proceeded to the hospital to see Mrs. Smith. She was sitting up in bed watching television. She had her glasses on and her hearing aids in. Mr. Smith further testified that his mother could read and write English. Mr. Rittenbush read the testament to Mrs. Smith and she followed along with her fingers. At the time Mrs. Smith signed the testament, Mr. Smith, Mr. Rittenbush, and a hospital nurse, Caren Wilkerson, were in the room. A second nurse, Ivan Hamilton, was in the doorway. All four people witnessed Mrs. Smith sign the testament.
Ivan Hamilton, a registered nurse at the hospital at the time the testament was executed, testified that, while standing in the doorway of the testator's room, he witnessed Mrs. Smith sign the testament. He explained that he was very busy when he was asked to be a witness and did not have time to remain in the room while the will was being read. As soon as Mrs. Smith signed the document, Mr. Hamilton left and returned to his duties. He could not be certain if Mrs. Smith signed the document once or on both pages of the document. However, he stated that the signing appeared to be over because the group began talking. At that point, he assumed that his duty as a witness was over since he had seen Mrs. Smith sign the testament. He later was asked to sign the *911 document himself. He did so at the nurses' station, not in the testator's room. He stated that he could see into the room from the nurses' station and Mrs. Smith could see him if she was looking.
Mr. Rittenbush, who drew up the will and acted as the notary, testified that he brought the will to the hospital for Mrs. Smith's approval. He explained that he would make any changes she wished. He began to read the document to her; however, because she was having trouble hearing him, he gave her a copy of the document to follow along. He asked her to read it aloud to him and she complied. After Mrs. Smith assured Mr. Rittenbush that the testament expressed her wishes, she signed the one she had read. Ms. Wilkerson and Mr. Smith were in the room at the time Mrs. Smith signed the will, and Mr. Hamilton was standing in the doorway. Mr. Rittenbush then took the document out to the nurses' station to have the witnesses sign the document. Mr. Rittenbush conceded that the witnesses did not sign the will in Mrs. Smith's room. He also stated that Ms. Wilkerson signed first then left to attend to patients. Mr. Hamilton signed as Ms. Wilkerson was leaving and Mr. Rittenbush signed last as the notary. Mr. Rittenbush admitted that the witnesses were not together the entire time it took for each to sign. Further, the testator was in her room when the witnesses and Mr. Rittenbush signed the document at the nurses' station. Although, Mr. Rittenbush pointed out that the nurses' station was nearby and in plain sight of the testator's room, it is not clear whether she could actually see the signing.
LSA-C.C. Art. 1577 sets forth the requirements of form for a notarial testament. There are two requirements when, as here, the testator can sign her name and read and is physically able to do so. According to article 1577 the testament shall be executed in the following manner:
(1) In the presence of the notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
(2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this __ day of _____, ____."
All of the formal requisites for the composition of a statutory will must be observed, under penalty of nullity. Succession of Dilley, 422 So.2d 516, (La.App. 5 Cir.1982). There is a presumption in favor of the validity of testaments in general which can be rebutted with exceptionally compelling proof of the nonobservance of formalities. Succession of Daigle, 601 So.2d 10, 12-13 (La.App. 3 Cir.1992). When the record shows that the testator and both witnesses did not sign in the presence of the notary and that the notary did not sign in the presence of both witnesses, the testament must be declared a nullity. Succession of Pope, 89 So.2d 894, 230 La. 1049, (La.1956).[2]
It is clear from the judgment, that the court found the will was invalid because Mr. Hamilton was not actually in the room at the time the testator signed. We do not agree that this alone invalidates an otherwise valid statutory will. We will not hold that the requirement is so restrictive. *912 The article requires only that the witnesses and notary be "in the presence of the testator when the document is signed. When a testator signs a will in a small hospital room, a witness may see the signing more clearly from outside of the doorway than if a testator signed the document in a much larger room in which the witness was standing at the other end. Accordingly, we find the trial court erred in invalidating the will on the basis that one of the witnesses was standing outside of the doorway when the testator signed.
However, that does not end our inquiry. Article 1577 also requires that the witnesses and the notary sign the document "in the presence of the testator and each other." We agree with the trial judge that this requirement was not met in this case. It is clear from the testimony that the witnesses and the notary signed at the nurses' station at different times and not in the presence of each other or the testator. Thus, we find the trial court was correct in invalidating the testament.
AFFIRMED.
NOTES
[1] The plaintiff has apparently abandoned the accusation that the deceased was not of sound mind and only brings up issues of form in the trial court and this court. Thus, we restrict our discussion to the latter.
[2] We note that the above cited cases were decided before the enactment of C.C. article 1577; however, the requirements for a statutory will were the same under the repealed statutes discussed in those cases. Thus, we find the law in the cases still applicable.