SUCCESSION OF VICTOR EDWARD
ROBINSON BRADLEY, JR. A/K/A
VICTOR E. BRADLEY, JR. A/K/A
VIC BRADLEY, JR.

NO. 20-CA-168

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 12,601, DIVISION "E"
HONORABLE TIMOTHY S. MARCEL, JUDGE PRESIDING


December 02, 2020


**JUDE G. GRAVOIS**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Marc E. Johnson


<u>**AFFIRMED**</u>
   **JGG**
   **SMC**
   **MEJ**

COUNSEL FOR PLAINTIFF/APPELLANT,
CECILIA G. BRADLEY
    Martha J. Maher

COUNSEL FOR DEFENDANT/APPELLEE,
GAVIN PATRICK BRADLEY, IN HIS CAPACITY AS
INDEPENDENT EXECUTOR FOR AND THE SUCCESSION
OF VICTOR EDWARD ROBINSON BRADLEY, JR.
    Robert L. Raymond

**GRAVOIS, J.**

Appellant Cecilia G. Bradley, wife of the decedent Victor E. Bradley, Jr., appeals the March 17, 2020 judgment of the trial court which dismissed her petition for nullity challenging the validity of decedent's Last Will and Testament on the grounds that defendants, decedent's surviving adult children, exercised undue influence over decedent in his last days by confecting his Last Will and Testament that left all of his property to defendants, rather than to Mrs. Bradley, which decedent's previous will had done.[1] After trial on the merits, the court took the matter under advisement. The court thereafter issued its judgment which ruled against Mrs. Bradley, denying and dismissing her petition to annul. This suspensive appeal followed.

On appeal, Mrs. Bradley argues that this Court should conduct a *de novo* review of the record, without deference to the trial court's findings, because the trial court erred by "mischaracterizing" the testimony of several witnesses who testified about the execution of the will. She also argues that the trial court erred in finding that she failed to prove her case that her husband's adult children exercised undue influence over him, and that the trial court erred in finding the will valid as to form under La. C.C. art. 1577.

For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Victor E. Bradley, Jr. died on August 29, 2019 at the age of 87. At the time of his death, Mr. Bradley was in end stage renal disease and was residing in hospice care. Mr. Bradley was married to appellant, Cecilia, for almost 28 years at the time of his death. He also had five surviving children of his first marriage, who are the defendants herein.

---

[1] Mr. Bradley's surviving children are Gavin Patrick Bradley, Brandon Bradley, Shawn Christian Bradley, Erin Bradley Chaisson, and Jarred Patrick Bradley.

On August 30, 2019, the day after Mr. Bradley's death, Gavin Bradley, one of decedent's sons, filed a Petition to Probate Notarial Will and to Confirm Independent Executor. The petition alleged that Mr. Bradley left a Last Will and Testament duly executed in notarial form, dated August 20, 2019, revoking all previous wills. Attached to the petition were an Affidavit of Death and Heirship and Mr. Bradley's aforementioned Last Will and Testament. On that same day, the trial court signed orders confirming cremation and appointing Gavin Bradley as the independent executor of his father's estate.

On September 27, 2019, Cecilia Bradley filed, in the previously opened succession proceeding, a Petition to Annul the probated testament of August 20, 2019 and the Order confirming the independent executor. Therein, she alleged that the will dated August 20, 2019 should be recognized as a nullity on two grounds: first, that the decedent lacked testamentary capacity when the will was executed; and second, that the defendants exercised undue influence over decedent to execute the new will. She also requested probate of a Last Will and Testament executed by her late husband in 2005, and requested that she be appointed independent executrix of his estate. Attached to her petition was a copy of a will executed by the decedent on May 13, 2005.[2]

Defendants answered the Petition to Annul, alleging that on August 20, 2019, their father was mentally competent and of sound mind, and denying that any undue or outside influence was exercised by them.

Following a trial on the merits on February 14, 2020, the trial court entered a written judgment dated March 17, 2020, denying Mrs. Bradley's petition to annul. In written reasons, the judge specifically found that Mr. Bradley was not subject to

---

[2] In response to a Dilatory Exception of Non-Conformity of the Petition with La. C.C.P. Article 891 and Peremptory Exception of Failure to Join Indispensable Parties filed by Gavin Bradley, Mrs. Bradley later filed an Amended and Supplemental Petition to Annul, naming Gavin and his four siblings as defendants. As a result, the exceptions were later ruled moot and are not at issue in this appeal.

undue influence.[3]  The court also found that the will was in proper form, and declined to invalidate it on these grounds.  Mrs. Bradley filed a motion for a suspensive appeal, which was granted.

The record reveals that Mr. and Mrs. Bradley had been married for almost 28 years in August of 2019.  Mr. Bradley was an 87-year-old retired attorney and lived with appellant, his second wife, in Destrehan, Louisiana.  In August of 2019, he was hospitalized at East Jefferson Hospital with end stage renal failure.  Mrs. Bradley testified that she had been his primary caretaker for the last four and a half years, during which time she administered his daily medical and personal care that included home dialysis every night.  She testified that over the years, she had enjoyed a good relationship with Mr. Bradley's children from his first marriage, the defendants herein, but sometime in 2018, the relationships cooled when she asked for help caring for Mr. Bradley on one occasion.

Following his hospital stay at East Jefferson Hospital, Mr. Bradley was moved to St. Joseph Carpenter House hospice.  Mrs. Bradley testified that her husband wished to enter the hospice.  He was there five days when he was transferred by his children to Ochsner Hospital in Jefferson Parish on August 16, 2019.  While he was hospitalized at Ochsner, Mr. Bradley's children informed Mrs. Bradley that their father wanted to divorce her.  Mrs. Bradley testified that she told Mr. Bradley she did not want a divorce, and that he agreed to reassess their relationship.  She had been told by defendants at a "family meeting" around this time, where her own sister and brother-in-law were also present, to move out of the marital home so that it could be retrofitted for his needs upon his discharge. She said they threatened to report her to the authorities for "elder abuse" if she did not do as they wished.  She testified that during his last hospitalization, the

_____

[3] At trial, Mrs. Bradley stipulated to Mr. Bradley's testamentary capacity.  Accordingly, this issue was not tried and is not before this Court on appeal.

defendants prevented her from seeing her husband alone and ultimately prevented her from seeing him at all, after she saw him last on August 21, 2019.

Unbeknownst to Mrs. Bradley at the time, his children employed an attorney and notary, Steven Schoenfeld, to execute a durable power of attorney in favor of his son Jarred Bradley, which was executed in Mr. Bradley's hospital room at Ochsner on August 16, 2019, and also to draw up and execute a last will and testament, which was accomplished on August 20, 2019. Another attorney, Maria Chaisson, sister-in-law to Mr. Bradley's daughter, who had also visited with Mr. Bradley when he was in St. Joseph Carpenter House hospice, met with Mr. Bradley around August 25, 2019 to draw up a petition for divorce, which she filed on his behalf several days prior to his death.

Mrs. Bradley testified that Mr. Bradley was discharged from Ochsner and moved to a different hospice center. She said that none of his children informed her of either his discharge or to which hospice he was admitted, and that she never saw her husband again. She testified that none of his children informed her when he died, but that she was so informed by her niece living in Houston, who had seen the obituary online. Instead, she testified that upon information and belief, Mr. Bradley's daughter informed authorities that Mrs. Bradley was suicidal and had her handcuffed and arrested at the marital home on August 30, 2019 and transported to a hospital for a mental health hold, where she stayed for 23 hours. Upon returning home, she discovered items missing from the home (furniture, mementos, financial papers, and a checkbook), and the destruction of other items. She testified that Jarred Bradley, decedent's son, took $15,000 from a joint checking account belonging to her and her late husband. She testified that she never asked any of his children about the missing items or money, and that a few items were eventually dropped off outside the house.

The day after Mr. Bradley died, the executor of his estate, Gavin Bradley, filed the succession proceeding from which this appeals stems.

## FIRST ASSIGNMENT OF ERROR

### *Standard of Review*

On appeal, Mrs. Bradley first argues that "because the instant case presents a mischaracterization of some of the witnesses' testimony and a judgment that is not reasonable when the testimony is considered as a whole," this Court should conduct a *de novo* review of this record. She asks this Court to reverse "such erroneous findings" after a *de novo* review of the record because a "reasonable factual basis does not exist for the finding of the trial court," and "the record establishes that the finding is clearly wrong." The substantive testimonies that Mrs. Bradley argues were "mischaracterized" are the testimonies of the two people who signed as witnesses to Mr. Bradley's last will, Dr. Samuel Andrews and Mr. Timothy Becnel. She argues that the district court committed manifest error by mischaracterizing the testimony to find that the execution of decedent's will satisfied the statutory requirements of La. C.C. art. 1577, where neither witness could recall the other one being present at the time each other witnessed and signed the will.[4]

The factual findings of the trial court, in will contest cases, are afforded great weight and will not be set aside on appeal absent manifest error. *In re Succession of Spitzfaden*, 09-212 (La. App. 5 Cir. 12/8/09), 30 So.3d 88, 91.

---

[4] It is duly noted that Mrs. Bradley did not plead invalidity of form of the will under La. C.C. art. 1577. La. C.C.P. art. 2902 requires that the "opposition to the petition for the probate of a testament shall comply with Article 2972, shall allege the grounds of invalidity of the testament relied on by the opponent, and shall be served upon the petitioner for the probate of the testament." Mrs. Bradley's petition and amended petition opposing the probate of the 2019 will pleaded lack of testamentary capacity and undue influence. Nor did defendants' answers raise the issue of validity as to form. The trial court, nonetheless, considered this issue in its written reasons for judgment. It appears that by lack of objection, as per La. C.C.P. art. 1154, as neither party raised the issue post judgment or in this Court, the parties have acquiesced to the expansion of the pleadings to include invalidity of form.

As our Supreme Court thoroughly stated in *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882-83 (La. 1993):

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840 (La. 1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
>
> 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
>
> 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
>
> See *Mart v. Hill*, 505 So.2d 1120, 1127 (La. 1987).
>
> This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. *Id.* The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
>
> Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. See generally, *Cosse v. Allen-Bradley Co.*, 601 So.2d 1349, 1351 (La. 1992); *Housley v. Cerise*, 579 So.2d 973 (La. 1991); *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La. 1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell v. ESCO*, 549 So.2d 840 (La. 1989); *Arceneaux v. Domingue*, 365 So.2d 1330 (La. 1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell*, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that 'if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Housley v. Cerise*, 579 So.2d 973 (La. 1991) (quoting *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La. 1990)).
>
> This court has recognized that "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper

allocation of trial and appellate functions between the respective courts." *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.*

When the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required to redetermine the facts *de novo*, without deference to the findings of the trial court, from the entire record and render a judgment on the merits. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989).

Under the manifest error standard, this Court is required to, and routinely does review the entirety of the appellate record, regardless of whether litigants request it, and has done so in this case. Upon review, we find no manifest error in the trial court's conclusions of fact drawn from the testimonies of the all of the witnesses, as is further discussed below. Further, Mrs. Bradley does not argue that the trial court committed a reversible error of law or applied the incorrect law to the facts of this case, and we find none. Thus, finding no reversible error of law or manifest error of material fact, we find the proper standard of review to be under the manifest error/clearly wrong doctrine.

## SECOND ASSIGNMENT OF ERROR

### *Validity of the Will as to Form*

La. C.C. art. 1577 provides:

> The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> > (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
> >
> > (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and

> has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of _____, ____."

All of the formal requisites for the composition of a statutory will must be observed, under penalty of nullity. *In re Succession of Smith*, 01-930 (La. App. 5 Cir. 1/15/02), 806 So.2d 909, 911, *writ denied*, 02-0633 (La. 5/3/02), 815 So.2d 105. There is a presumption in favor of the validity of testaments in general which can be rebutted with exceptionally compelling proof of the nonobservance of formalities. *Id.* at 911 (internal citations omitted). When the record shows that the testator and both witnesses did not sign in the presence of the notary and that the notary did not sign in the presence of both witnesses, the testament must be declared a nullity. *Id.*

In the *Smith* case, this Court declined to invalidate a will on the basis that one witness, a nurse, was not "in the [hospital] room" when the testator signed her will, but was in the doorway looking in. This Court noted that La. C.C. art. 1577 only requires that the testator sign "in the presence of" the notary and witnesses, and that the nurse's location in the doorway watching the testator fulfilled this statutory requirement. However, the will was nonetheless found invalid as to form because the evidence clearly showed that Article 1577's requirement that the witnesses and the notary sign the document "in the presence of the testator and each other" was clearly not met in that case. *Smith*, 806 So.2d at 912.

Turning to the testimonies of Mr. Becnel and Dr. Andrews, the record shows that neither witness had complete recall of the details of the will's execution. The testimonies were inconsistent with each other regarding in which order they witnessed the will, and whether each witness was present when the other signed. Mr. Becnel did not appear at trial, due to the inability to serve him with a subpoena, so his perpetuation deposition was entered into evidence in lieu of his live testimony. Mr. Becnel was a stranger to the parties and the witnesses. He was

at Ochsner Hospital staying with his brother, who was a patient in a room near Mr. Bradley's room. His deposition testimony was clear that he was reluctant to be involved, describing how he was approached by a woman presumed to be Mr. Bradley's daughter, and that he tried to avoid her in order not to participate. He repeatedly asked whether "it was legal." He testified that he was only in Mr. Bradley's room a short time and that he did not remember seeing "another old guy," presumably Dr. Andrews, in the room, and that the only "old guy" he saw was the testator. Mr. Becnel was asked to describe the people present in the room and described Mr. Bradley, the "justice of the peace" (presumably the attorney notary, Mr. Schoenfeld, who prepared and executed the will), a woman, and two men whom he presumed were the woman's adult children. His testimony as a whole showed that he did not know who Dr. Andrews was and did not recall seeing anyone who looked like him in the room.

Dr. Andrews, the other witness to the will, testified that his daughter was married to one of Mr. Bradley's sons, and thus he had known Mr. Bradley for around 20 years. He also knew the attorney, Mr. Schoenfeld, socially, as he had treated Mr. Schoenfeld's parents, though it was a coincidence that Mr. Bradley's children had hired him. He did not specifically remember anyone else present, though he did remember seeing people in the room. He did see Mr. Bradley sign the will, and was focused on him. He did not recall Mr. Becnel or seeing Mr. Becnel sign the will as a witness, though he "vaguely" remembered "the other witness" in the room but didn't speak to him, and he did not recall seeing the other witness sign the will.

Mrs. Bradley's argument on appeal, however, that these two testimonies cannot provide a factual basis for the court's finding that the statutory formalities of the will were followed, ignores the very clear and direct testimony of Mr. Schoenfeld, the attorney who drew up the will and executed it. Mr. Schoenfeld

testified that he was very familiar with La. C.C. art. 1577's requirements that a will must be signed by the testator in the presence of two witnesses, and that the witnesses must sign in the presence of him and each other, that he always followed these requirements when he executed a will, and that he had absolutely followed these legal requirements in this case. Mrs. Bradley characterizes Mr. Schoenfeld's testimony, in her brief, as "self-serving," but this is inaccurate as Mr. Schoenfeld is not a party to these proceedings. Mr. Schoenfeld was a disinterested professional, who was not personally acquainted with the parties, whose services were retained, and who had no interest in the substance or outcome of the parties' or Mr. Bradley's personal affairs. The testimonies of Mr. Becnel and Dr. Andrews, neither of whom had a complete or detailed recall of the event, do not impeach nor cast doubt upon Mr. Schoenfeld's superior recollection of the facts surrounding his professional service to Mr. Bradley. The inconsistencies in the testimonies of Mr. Becnel and Dr. Andrews do not provide "compelling proof" that the statutory formalities as to form were not observed, given the clear testimony of Mr. Schoenfeld, which provides the basis for the trial court's factual findings. Accordingly, after considering the entirety of the testimony of each witness in the record regarding this issue, we find no manifest error in the trial court's factual conclusion that the formalities of La. C.C. art. 1577 were met. This assignment of error is without merit.

### THIRD ASSIGNMENT OF ERROR

*Undue Influence*

Next, Mrs. Bradley argues that defendants exercised undue influence over Mr. Bradley in his last days in order that he should execute a new will leaving his entire estate to them, revoking his previous will which left his estate to her.

A donation *inter vivos* or *mortis causa* shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the

volition of the donor as to substitute the volition of the donee or other person for the volition of the donor.  La. C.C. art. 1479.

Concerning the type of influence that would result in the invalidity of a donation, Comment (b) to Article 1479 provides, in pertinent part:

> [E]veryone is more or less swayed by associations with other persons, so this Article attempts to describe the kind of influence that would cause the invalidity of a gift or disposition.  Physical coercion and duress clearly fall within the proscription of the previous Article.  The more subtle influences, such as creating resentment toward a natural object of a testator's bounty by false statements, may constitute the kind of influence that is reprobated by this Article, but will still call for evaluation by the trier of fact.  Since the ways of influencing another person are infinite, the definition given in this Article is used in an attempt to place a limit on the kind of influence that is deemed offensive.  Mere advice, or persuasion, or kindness and assistance, should not constitute influence that would destroy the free agency of a donor and substitute someone else's volition for his own.

When seeking to annul a donation on the basis of undue influence, it is not sufficient to merely show that the donee exercised some degree of influence over the donor; instead, the challenger must show that the donee's influence was so substantial that the donee substituted his or her volition for that of the donor.  *In re Succession of Spitzfaden*, 30 So.3d at 93, citing *In re Succession of Berman*, 05-0641 (La. App. 4 Cir. 7/26/06), 937 So.2d 437.

The burden of proof for one challenging a donation based on "undue influence" is found in La. C.C. art. 1483:

> A person who challenges a donation because of fraud, duress, or undue influence, must prove it by clear and convincing evidence.  However, if, at the time the donation was made or the testament executed, a relationship of confidence existed between the donor and the wrongdoer and the wrongdoer was not then related to the donor by affinity, consanguinity or adoption, the person who challenges the donation need only prove the fraud, duress, or undue influence by a preponderance of the evidence.

Defendants are Mr. Bradley's children.  Because they are relatives of Mr. Bradley, La. C.C. art. 1483 requires that Mrs. Bradley show undue influence by clear and convincing evidence.  Our thorough review of the record shows that she failed to bear her burden of proof.

Mrs. Bradley's testimony essentially points to the defendants' success in isolating her from Mr. Bradley after he was admitted to Ochsner Hospital on or about August 16, 2019, as evidence of his children's undue influence over him, especially in light of his poor and rapidly declining physical condition, because Mr. Bradley's new will dates from that time.

Mrs. Bradley testified that she was unaware, before that, that her husband wanted a divorce, or that he had executed a new durable power of attorney in favor of his son on August 16. Such actions, she tacitly argues, are inconsistent with how she knew her husband felt prior to his children isolating him from her. She emphasized the fact that she was her husband's devoted daily caregiver during the last four and a half years of his life while he suffered from serious and ultimately terminal renal failure.

Mrs. Bradley provided no other evidence tending to support her claim that defendants exerted undue influence upon Mr. Bradley. Her witnesses, her sister and her brother-in-law, testified generally as to their observations of the parties' relationships and as to the aforementioned family meeting, at which they were present and at which Mrs. Bradley was allegedly threatened, but this evidence does not bear Mrs. Bradley's "clear and convincing" burden of proof regarding the exercise of undue influence upon Mr. Bradley by his children.

Defendants, however, offered the testimonies of Dr. Andrews, Maria Chaisson, and Mr. Schoenfeld regarding their impression of Mr. Bradley's mental state during the relevant time period while he was hospitalized and/or under hospice care after August 9, 2019. Dr. Andrews testified that he had known Mr. Bradley for at least 20 years. His contact with Mr. Bradley during this time appears to have been limited to the day the will was executed. His testimony is clear that he found the testator mentally alert and relaxed. He testified that he saw no evidence of coercion by the defendants at that visit.

Mr. Schoenfeld had two encounters with Mr. Bradley, the first on August 16, 2019 when he executed the durable power of attorney at Ochsner Hospital, and the second on August 20, when they executed the new will in Mr. Bradley's hospital room. Mr. Schoenfeld said that on August 16, Mr. Bradley, though ill, was alert and flipped through the power of attorney, and listened to Mr. Schoenfeld's explanation of the terms prior to signing it.

Mr. Schoenfeld also prepared the will that he later executed from draft provisions sent to him by Jarred Bradley. While he did note that Mr. Bradley had deteriorated from the last visit, he explained that Mr. Bradley affirmed to him that the will contained his intent and wishes. He saw no evidence of coercion or duress in Mr. Bradley's words or demeanor, and denied seeing or hearing coercion from the defendants or the witnesses in the hospital room at the time. He testified that had he discerned any coercion or duress, he would not have proceeded with the will's execution.

Maria Chaisson testified that she had known Mr. Bradley for perhaps 30 years, both as an extended family member (Mr. Bradley's daughter married her brother), and also as his former employee at the public defender's office. She visited him both at the first hospice and at Ochsner. She acknowledged his weak and debilitated physical condition, but found him lucid and his personality normal, noting that he was telling legal "war stories" with the people in his room. Though she did not participate in the execution of the will, she did discuss with him his wish to file for a divorce. In two separate meetings with him to discuss the divorce petition and then to read it to him in its entirety, she did not detect any indication that Mr. Bradley was not acting of his own free will during this time.

In its extensive written reasons for judgment, the trial court noted:

> A finding of undue influence is fact intensive. Throughout the trial, evidence demonstrated the Bradley children were heavily involved in their father's affairs during his final days. However, the

evidence does not show the Bradley children went beyond facilitated [sic] their father's final wishes. The evidence also showed that Mr. Bradley, although very ill, very much remained the described 'man of his own.'

The Court finds the testimonies of Maria Chaisson, Dr. Andrews, and Stephen Schoenfeld particularly convincing. Their testimonies unequivocally establish that Mr. Bradley, although very ill and near the end of his life, was well aware of his actions and understood their ramifications.

Having thoroughly reviewed the record and transcript in this matter, we find no manifest error in the trial court's finding of fact in this regard.

Accordingly, we find no merit to this assignment of error.

## CONCLUSION

For the reasons assigned above, we affirm the judgment of the trial court which denied and dismissed with prejudice Mrs. Bradley's Petition to Annul her husband's notarial testament dated August 20, 2019.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 2, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**20-CA-168**

### E-NOTIFIED
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE TIMOTHY S. MARCEL (DISTRICT JUDGE)
MARTHA J. MAHER (APPELLANT)          ROBERT L. RAYMOND (APPELLEE)

### MAILED
NO ATTORNEYS WERE MAILED